Yes, Your Honor. Good morning, and may it please the Court. My name is John Shepherd. I'm appearing here today on behalf of the Federal Energy Regulatory Commission, where I serve as the Director of Legal Policy in the Office of General Counsel. We'd like two minutes to reserve two minutes for rebuttal, please, Your Honor. All right. Thank you. Everyone agrees that both cases before the Court today are not justiciable. Both decisions concern the Commission's authority over a filed rape in the event that a party seeks to reject a Commission jurisdictional Power Purchase Agreement in bankruptcy. But PG&E has never alleged that it wished to reject any of those Power Purchase Agreements, and it is now one confirmation of, and made effective, a reorganization plan that voluntarily assumes, not rejects, all of its PPAs. Any dispute that may ever have existed, and of course is something the Commission has always disputed, is now... So how would you respond to PG&E's argument that first orders forced the company to assume the contracts? I believe that they've described it as casting a pall over their decision, or somehow burdening the process. And, Your Honor, we don't think that there was any merit to that suggestion, one of several that tried to escape from a straightforward application of bank corps. The first problem with that argument, Your Honor, is a sort of theoretical one. It is always going to... The argument is overbroad because it is always going to be the case that someone who is trying to overturn a decision is burdened by it. And there's no real way to distinguish that situation here from any other case. If there were no bankruptcy court order, they would still be finding themselves burdened, to the extent they felt that were true, by the first order. And so I think that any step in that direction would begin to destroy the rule. The second problem is really factual, and that is that the Commission's orders, in particular, the Reed Hearing Order, very expressly disclaims any jurisdiction over the rejection process. We merely explain that to the extent that PG&E does decide to reject, that if they also... If they wish to change their filed rate, they're also going to have to come to FERC to complete that process. I would also argue that PG&E's claim to have been somehow cowed by the Commission's orders is really belied by its conduct. Day one of the bankruptcy proceeding, they began by seeking and obtaining an order from the bankruptcy court that directed the Commission not to issue any orders that might in any way constrain what the bankruptcy court might do with regard to rejection in the event rejection was ever sought. And of course, it was not. Counsel, why did FERC issue that order? Didn't it seem premature if PG&E hasn't said that they were going to reject any PPA? Why did FERC issue that order in the first place? It was not premature at the time that the first order was issued, nor on Reed Hearing either, Your Honor. First, to step back for a moment, it is agencies, unlike courts, are not bound by the same rules with regard to standing administrative, standing as looser. Indeed, I would argue that one of the critical functions that agencies perform as distinct from courts is the ability to provide advanced guidance that removes the need to have a conflict, and that's exactly what happened here. We had emergency petitions filed by—we ended up only issuing two of the orders because several people sought guidance in the subject, and after we got the first two emergency petitions, we just dismissed the other inbound ones and said, listen, we've already spoken. You can stop asking. So clearly, there was a great deal of concern throughout the industry when a major national utility says it wants to reject $42 billion worth of contracts. You can understand why for them it was really quite an important thing to get an answer from the Commission, and so we provided that answer. It was very fast. Counsel, if the agency is, as you say, and I think you're right, is differently situated than courts, then I would think that that would also cut against the agency's argument to try to agency, as you say, can kind of reach out there. One might say prematurely, but that would be a pejorative way to put it. I guess you could say it in a positive way. Then maybe that would weigh in favor—since Bancorp involved a court decision, maybe that would mean that Bancorp should be modified a little bit if it's an agency. Your Honor, I think this general appeal to equity is mistaken, this argument that PG&E makes, and here's why. First, we have a straightforward rule, and the Supreme Court's decision does not distinguish between agencies or courts for purposes of application of the rule. This court has not done that either, and I can indicate Pacific Tobo, for example, is one of the precedents that squarely confronts the application of this in the context of an agency decision rather than merely a court decision. So I believe this court's really already spoken to the idea that you look at both of those the same way, but it is very important to understand that Bancorp embraces the idea that precedent is important, and you don't unsettle it unless you have a good reason to, but I don't think that this thing is necessary. But it's exactly on that point that I think that what I'm asking about, precedent that process and courts are bound by, they don't decide moot questions, they have rightness issues and such, but I think you were just saying that an agency's slightly different, so an agency can kind of reach out there ahead, so you think that that might militate a little bit differently? No, Your Honor, I don't, and if I could give some other reasons why I think that setting aside FERC's order here, in addition to I don't believe being permitted under Bancorp, but there are other reasons why it would be a bad idea to extend this particular set of orders. So why do you want this arrow in your quiver? Why does FERC want to hold on to these? If I want to understand my decision, I always like to understand what people want to do with it, so why is this so important to you? Your Honor, I'm happy to answer that question after first this brief note. Under Bancorp, it is not our burden to explain why our decision needs to be retained, but instead the petitioner's burden to explain why it's entitled to the extraordinary remedy of vacature in a situation where they have destroyed their own right to review through a voluntary act, or actually voluntary series of acts constantly ratified since the outset of this position. But why is this particular set of orders important? Because these are especially important These are the Commission's most authoritative pronouncement on the relationship between bankruptcy courts and the Commission, where our previous encounters with this were a long time ago in the context of the merit proceeding, and much has changed. So this is our authoritative pronouncement about how we expect to interact with the courts. It makes important statements about what we expect people to not do, which is ask us to assert jurisdiction over the rejection process, for example. It deals with a great number of prior precedents and explains their role and how we approach matters in the FPA. Moreover, these orders have served as the launching pad. They're the foundational orders from which other orders have since issued. In particular, our most recent declaratory order called ETC Tiger, which applies the same concepts dealt with in this order in the NGA setting. Can I ask you about that, counsel? Yeah, I was aware of that. And so you'd still have ETC? Yes, Your Honor, we would still have ETC, but we would also need to explain why the foundational orders upon which those orders are based have been vacated. Should we really be put to the burden of having to re-explain every time someone wants to cite our NGA orders or any other orders we might issue? I don't know why you have to explain it. It's just because the issue became moot. And I understand your argument as well, but this is differently situated. But you would have to explain that. I mean, it's not like the court would say you're wrong. It would just say they've vacated. Well, again, Your Honor, we're getting returned to the center of gravity on this, which is that I really don't think it's the commission's task to have to explain why it wants to keep it. I think that we have good reasons where we want to keep it. And I've still got one more to add there. But again, the burden here is clearly on PG&E to explain. The bankruptcy court was very hostile towards Burke. I mean, in my review of that, if we had to decide it, it was basically saying, Burke, go away. You don't belong here. There was kind of a terrible description of the bankruptcy courts. I mean, really just did not want to see your face. Do not darken my door. You are not welcome here. And so that would have been part of what we would have had to decide, you know, whether exactly you had a right to be there. And, you know, whether the bankruptcy court was right about that. But we're not going to decide that at this point. So is it is is part of your reason that you don't want bankruptcy courts to say go away? I think we would prefer to avoid to avoid injunctions from from bankruptcy courts wherever wherever we can possibly do that. I think Your Honor was probably aware that that we've already had to litigate that question once in the Sixth Circuit. And that decision became final on Monday when the deadline for certiorari passed. So yes. And the result of that was? The result of the Sixth Circuit. The Sixth Circuit's decision attempted to reconcile the viewpoint that the Fifth Circuit took in an older case called Merritt. They vacated and remanded the bankruptcy court's injunction against FERC in that case, which presented a different fact pattern than the one here because there FERC never got the opportunity to issue an order because that company went to bankruptcy court first and obtained an order preventing us from doing anything. Let me go to but let me talk a little bit about the why doesn't the state wildfire funds June 20th deadline constitute exceptional circumstance warranty and vacatur of the FERC orders? Because obviously PG&E surprisingly doesn't emphasize that as much as I would have if I were in their position. But it was talked about earlier as there's no doubt I mean people that live in California we're all aware of the problems that have occurred and Paradise getting completely wiped out and all of the complaints against PG&E and all of that and 21 billion dollars were at lawsuits and problems all up the the wazoo. So and was it and apparently the governor's pushing them and if they didn't if they didn't agree to honor the contracts and if they didn't get this over and get out of bankruptcy they they they leave 21 million dollars 21 billion dollars on the table. So why isn't that kind of an extraordinary thing that isn't of their making? The wildfires were unusual event the wildfire fund was an unusual event all these things were unusual events but none of them bear on the question here. What makes this case move is nothing to do with the with with their their timing of the wildfire fund or anything else. That business decision. Excuse me one second to the clerk I can't see the clock anymore did you get rid of the clock? I'm one minute and 49 seconds over y'all. Okay I but I lost the clock by the judge. Okay yeah we lost the clock now I can't now I can't see all right is there a way now I don't see Mr. Shepard. Oh I guess I think she's on I think um okay now I see it okay that's good okay your honor all of the things that you mentioned with regard to external things that might have driven PG&E's bankruptcy decisions including the attempts reorganizing in the PG&E's considerations but they have nothing to do with the fight in this case. What makes this case moot was not the expiration time this is not a deadline situation there could have been a wildlife fund or no wildlife fund what made this case moot indeed what made this case never ripe was the fact that PG&E never ever suggested or attempted to reject one of their contracts that well let me ask you this then okay let me ask you this because this is the response to one thing PG&E is claiming against you if FERC failed to protect itself by for example declining to pursue a stay of the bankruptcy proceedings as PG&E asserts what what how does that play into this? Uh that's their their their second and um and I think a rather specious claim uh they attempt to support some need to not set aside the bankruptcy of the court order which seems to be kind of a of a fig leaf argument um there is no reason that the commission had any interest in trying to stay the re-emergence of a major national utility from bankruptcy in order for it to resume its regular course of business there was no reason certainly for us to do anything which would which would seriously contend that they would have preferred that we attempt to stay the bankruptcy court's orders in order to endanger their access to either of those things that can't possibly be right as in terms of the way that the burdens are allocated here our only interest in this case ever has been to make the following assertion do whatever you wish in bankruptcy via rejection or assumption of contracts but in the event that you are going to reject a contract in bankruptcy court that court has no power to actually change the filed rate you must come here and do that that is the only interest we've ever been vindicated we've ever been interested in vindicating and that interest is in no way implicated by the wildfire fund or any of the other considerations that drove that drove uh the the the company to bankruptcy. Council the one question I have is it seems that according to our president we hold the actions of of mooting a case against the the party that mooted the case only if their actions were related to dependency of the appeal and that's for Rixkey and Dilley what what were the actions the action that seemed to move this case had nothing to do with this appeal in my view? Your honor I don't I don't think that that that that that's a a correct reading of the law in the post-bank corp world I think bank corp eliminates the the idea as as Dilley mentions uh that that a nefarious motive is a requirement it can certainly if a party acts with a deliberately nefarious motive they're trying to destroy to destroy the mootness if that's their if that's their intent one of course that can be an aggravating factor but it is not your honor of a a required factor and if if you like I can I can quote language from Dilley uh to that effect because they walk through bank corp on this on this very point and say vacature is not appropriate where an appeal is mooted even if the appellant did not it that that's a that's a good idea if you look at the at the if you want the rule to work because you don't have to do an inquiry sometimes there's been a need for an inquiry Dilley presented presented that situation because that was the contention but uh but I don't I don't think it after bank corp one can seriously argue it's required it can definitely pour gasoline in the fire. Did either of my colleagues have any additional questions? Okay so I'm going to I'm going to give you two minutes for rebuttal then all right thank you thank you. May it please the court. Good morning. John Estes I represent uh NextEra in this case and stand here in front of a number of allied parties on our briefs we were petitioners with FERC on appeal the bankruptcy case we were interviewing or supporting FERC in the agency case. I would suggest you ask the question why PG&E cares what happens to these decisions and the answer I think is they don't. The only reason they would care is if they're in bankruptcy which they're not or they were headed back in soon which I am quite sure we are not going to hear today. We care for a very concrete reason. We started the FERC case because we were concerned that PG&E was going to reject contracts that were valuable to us and to the state of California. We prevailed but that order was one of general applicability. Now the PG&E risk has faded into the background as PG&E itself says in its brief at pages four and five it's speculated to imagine PG&E will care again about whether it can accept or reject a contract in bankruptcy. We care because the 34 companies on the signature block of our brief have within them by the way subsidiaries that hold hundreds of contracts. NextEra itself has hundreds of subsidiaries that are within this case. So we're talking about a broad swath of commerce involving the power industry and as Mr. Shepard said this goes into the gas industry too. You're talking about between those two industries something like eight percent of the gross national product of the United States of America. We want the ability to preserve what Congress gave FERC in terms of its authority under the Power Act and the Gas Act which is the ability to look at whether regulatory obligations need to be altered in the event a contract is rejected. It is I would submit to you highly likely that one of the companies here before you today has faced that problem. In fact I would submit to you it's more likely that PG&E will be on our side of the street rather than its side of the street it was on previously. Just as it was in the wake of its earlier bankruptcy when it opposed Calpine's bankrupt rejection arguments on the same grounds it the Calpine was making the same arguments that PG&E made previously. We care because we think FERC's regulatory obligation framework protects the public interest and is important to the health and efficiency of the power industry and the gas industry nationwide. FERC's decision applies nationwide. It's not limited to PG&E. We stand here we started our efforts in this case to deal with PG&E's rejection. We now stand here to defend the ramparts of Bancorp and this court's decision in Ringsby which by the way presages Bancorp and this court's decision in Dilley which say if you engineer mootness if you kill off your own appeal in this case of the FERC case you don't get the vacancy. If you prevail below and you kill off your opponent's appeal which is what happened to us in the bankruptcy case vacancy follows it's automatic. What PG&E wants is for you to get one of those cases wrong under Supreme Court's guidance of actual rulings and your rulings. They want you to either get the wrong answer in the FERC case vacate it when that ground does not lie under prevailing precedent for good reasons or they want you to leave the bankruptcy case intact. They want you to commit error reversible error in one of these cases under the ground of equity. It's just fair but PG&E doesn't care what happens here. We care and their version of equity contradicts what Justice Scalia said in Bancorp which is the prime consideration in figuring out what is equitable what is fair what is just is where did mootness come from where did it come from here PG&E is the prime mover of mootness. They should not but counsel you didn't you mentioned that Bancorp says that we we we hold it against them when mootness results from the unilateral action of the party prevail below. How did PG&E prevail below in the FERC? Oh they didn't if that's what I said your honor I apologize I misspoke. No I mean you that's what Bancorp says I mean you you you quoted it correctly but I just don't understand how PG&E prevailed below. Well I think it stands for the general proposition that you look at where at who the engineer of mootness is and the question becomes what's the geometry of the case and you in the first incarnation of all of this the prevailing party would see so there would be mootness caused by the prevailing party and the question would be well what do we do and the answer is the underlying decision is mooted but what this court in Dilley and Ringsby confirmed is that if you have the converse which we have in the FERC where John or Mr. Estes all of this all of this is sort of built on the idea that you're talking about you said a powerful argument that you know the parties don't really care so much about this or at least should it seems like for it seems like PG&E cares they're here but we'll hear from them in a second but let's say you're right they don't really care but we care these third these third party entities I mean that's exactly the reason you're right that's exactly the reason why sometimes your orders are left in place but there's also I mean the general Munsingware rule is you want to get rid of these decisions because you want to get rid of decisions precisely because people might care about them but they won't have actually been sort of fully vetted right fully vetted ruled on by a court etc I mean that's the general Munsingware rule it seems to me that here you know everybody's trying to argue about you know trying to say this is like bank corp and stuff but but what makes this different in one sense is this is not a lower court decision that was just that was an independent party deciding an issue and so now you should benefit from that this was FERC deciding its own jurisdiction right and having had no court actually rule on that having that now be the law that you all can rely on it seems to me that the general concept behind Munsingware if no court has addressed it all it's been is FERC sort of shockingly saying hey we have jurisdiction right it's a very self-interested decision like why why should we allow all these third parties to benefit from that when no court has has been able to rule on it I've been able to like actually have an independent party look at it well your honor as someone who who litigates in the courts of appeals you know after FERC cases on both sides sometimes as a petitioner and sometimes as a supporting intervener I understand and agree with the notion that that that a reviewing court needs to sometimes pass on what an agency says but in this situation because of the fabric of administrative law if this if FERC's decision which we obtained in the next era case were to be applied to pick someone different who's in bankruptcy two years from now they get to challenge FERC's decision as applied to them it's not like the ship sailed three years ago and they can't do anything about it this is just a prior agency which is telling us that they've taken this this decision and already applied it in ETC and I didn't quite understand why it's a big deal if if this decision goes away but they seem to have thought so so I don't know if that's your idea that you know it'll be a it'll be a brand new day with the next decision and they won't rely on it they will too that's why they want to keep it that's why you want to keep it well well no your honor I I actually think that's not well but this FERC can still take the same view they just don't have the imprimatur of a court at that point they could they we're not that if we vacate it's not saying FERC was wrong is it it's just not saying FERC was right well but if you if you've declined to vacate you're not saying anything on the merits either your honor and if I might go back uh well there's gotta I I don't think that you're not people won't try to hold on to something that tight if it's if it's not going to be used in a way to say that we're right well your honor uh let me answer your question and Judge Van Dyke's in the ETC case um ETC gets to argue that that FERC's relying on precedent it's wrong but let's talk about what the rule is here there's no bootstrapping where an agency context the FERC FERC may have a prior precedent that doesn't matter when it comes to the next case the FERC by the way it can reverse its view on precedent and if you if you just step back for a moment I guess what I would say is that PG&E wants an outcome has never appeared before in in reported decisions they want to achieve vacature of an order an agency order here is true in the context where they engineered looting they can't point to any case where that's happened nor can they point why they care about whether the case except but what about I mean what business would away from 21 billion dollar fund to help them deal with all their legal issues and problems I mean PG&E is you know probably with consumers PG&E isn't one of the most popular people in the state of California your honor they Mr. Shepherd was entirely correct they could have rejected the contrast we're glad they didn't we're very glad they didn't but one reason we supported expedition from the get-go because we were concerned that that 21 billion dollar carrot which does apply to all the utilities in California was going to have PG&E race forward we were not going to be able to overturn the bankruptcy court's decision and the ship was going to sail before we got our day in court as it happened happily PG&E assumed the contract but that was their choice they engineered their own movements the fact that they decided to do that on the way to getting a share of the 21 billion dollars is just sort of part of the landscape and there's always going to be collateral considerations that drive a commercial party's actions in a mootness context who knows why the why the bankruptcy settlement and bank work happened it's it's it's just natural that you'll have things influencing the course of action I would I would submit to you your honor that the the best place to look for your reaction to the equities here is judge Randolph's inimitable decision and then in the northern California Power 40 case the DC circuit in 2006 because there he looked at PG&E having just emerged from their first walk through bankruptcy trying to oppose vacature of a NRC decision in the wake of the bankruptcy after a settlement made the case and the other side of the of the NRC case said wait a second we didn't have anything to do with that that decision should stand it should be vacated because we we lost below and judge Randolph said about PG&E's arguments nonsense one might as well say the victim caused the robbery robbery by failing to put up enough resistance what were we supposed to do they assume the con the contrast try and throw sand in the gears of victory and delay their emergence from bankruptcy we would I think those are all I think those are all good points that we wanted to hear let me find out if my we're obviously over but I want to make sure if my colleagues have additional questions there's an opportunity for that I'm good thank you thank you so much all right well uh now we'll move to PG&E and uh uh I can assure you I already you've seen that my time limits have gone out the window so we'll make sure that we have all our questions answered relative to your position as well thank you your honor Elaine Goldenberg for PG&E and I'd like to reserve four minutes of my time for rebuttal the FERC order here should be vacated under the usual presumption of vacature in the event of mootness PG&E had no fault or to blame for mootness here because there was no voluntary forfeiture of PG&E's appeal rights and the FERC orders which this court may well have found unlawful had the court gotten to the merits as both the fifth and the sixth circuits did in assessing the same legal position that FERC is taking here uh shouldn't be left in place without judicial review and I guess I'd like to start with the judicial review point that some of the questions earlier touched on apparently contend that first orders could potentially harm PG&E in the future so you're trying to avoid that tell me about that yes your honor I don't think the court needs to inquire into harm to PG&E to apply the usual presumption but I asked a question so you can't tell me my questions are relevant okay there is there is possible harm to PG&E here as well as harm to the public if PG&E were to go into bankruptcy again which is not a imminent possibility by any means but it is not impossible then PG&E could be harmed by these orders in the context of a bankruptcy but even beyond that these orders reflect a view of the law that has implications for PG&E outside of bankruptcy what FERC has said in these orders and what it's argued to this court these orders mean is that despite the market-based system that FERC put into place long ago where parties freely enter into contracts and that's how rates are set each contract has essentially a regulatory shadow that creates ironclad regulatory obligations that persist even if the contract goes away and that has real implications for while parties enter into these contracts how the contracts are terminated and has possible implications for PG&E going forward also as a matter of the vacature analysis so you want FERC out of your life is what you're saying your honor we think that these orders haven't been subject to judicial review we think that if they have been subject to judicial review they might very well have fallen looking at the fifth and sixth circuit decisions we think there's an interest not only in interest of PG&E's okay but let's say let's say we don't know or we didn't decide the case but let's just say that we've been with this case for a while we've been looking at all of it let's just say in a backdrop we think FERC was right does that matter in the equation i mean i don't think that is dictating how the normal presumption of vacature plays out i'm emphasizing it only to put a point on the idea that judicial review of agency orders is extraordinarily important it runs throughout our law in a variety of areas and here i think some of the questions raised this point earlier there is a reason that FERC wants to keep these orders in place it's because having the orders in place is something that FERC will use going forward it will treat these orders as precedent it will point to them as saying that FERC has had a consistent position and that will support FERC in the future if there's judicial so are you going to tell me if it's vacated you're not going to claim that the vacature meant that FERC was wrong well your honor the vacature okay you can't have it both ways you don't want them to stay in place so that they can claim it's precedent but then if we vacate them then you're going to argue the second we get out of your site that FERC lost no your honor the only thing that will happen if the orders are vacated is the thing that always happens when orders are vacated under munsingwear which is that the order is deprived of preclusive and precedential effect that's what this court has repeatedly said in vacating orders and the reason for that is because the orders haven't been able to be tested okay so FERC can then do this again yeah and this means nothing is that or can do it again FERC can issue a new order but i want to hear you say that this means nothing to their they can do it and then you make the arguments that you've made but you don't claim oh but the court vacated it and so you should look at that yes your honor we would not claim that vacature means anything else than that the decision has been wiped off the books to free the parties to litigate the issues in the future that's what vacature means that's what the munsingwear doctrine does but the fact that FERC can act again in the future to make its views known and can issue a new order or could issue regulations cuts in favor of vacature because those orders those regulations whatever FERC does in the future in this area will be subject to judicial review counsel can i get you to clarify so i hear your argument and it seems to me that what would happen is if we if this order wasn't vacated uh from from our perspective as an as appeals court would be the neck if this came up the same issue happened again you know a decade later this came up they would uh what what pg&e or whoever was in pg&e you know position would argue was okay we've got a six and fifth circuit that cut again we have a decision from FERC i think your briefs would very clearly point out this decision from FERC was just left in place because of bank corp it wasn't this decision from FERC wasn't left in place because of any decision on the merits by the by the court of appeals and that would be right and so it doesn't if i was a judge sitting in that circumstance i wouldn't give a lot of weight to that decision i'd probably actually look to the fifth and sixth circuit since it seems like they um you know i would and so as a practical from a practical standpoint obviously FERC and next they care about having this decision on the books notwithstanding all of what i just said i'm trying to figure out why they what they think they get you said they get something for it but what do they get by by keeping these decisions on the book i agree your honor that if it came time for judicial review later a court wouldn't necessarily give a lot of weight to these orders except the extent that FERC might order that had maintained a consistent position over time which might help it fight off say an arbitrary and capriciousness in the kind of i want to hear the rest of your question but let me let me on that if they'd still say they'd have a consistent position because this would just say this decision just went away like you know i'm saying this wouldn't be an adverse decision against FERC moving it to just be have gone away so i don't i'm not sure i could see if people can always make arguments just like they can say so it was denied which means the supreme court agrees with me right you can people can say that but somebody sophisticated would say this wouldn't play into whether it's consistent or not so i'm not sure that works but keep going well i think the decision on the books would be helpful to them in saying that they mean a consistent position more than a decision that's been vacated but even beyond that it can deform the development of the law and affect parties behavior in the interim there may be parties out there and the public interest is an important part of the monsoon where vacature analysis it's not just about pg&e it's also about the public and how i want to hear why because i don't understand is that so i i think that must be right and that's why they must care so why will inform public behavior because they why wouldn't that inform public behavior well it may be again that decision is subject to judicial review and it may fall on judicial review in fact just a few weeks ago there was a rehearing petition filed in that case before FERC which is a precursor to review in a court and so that decision may not stand but if i see so this may be the only decision standing simply because it never it always avoided judicial review that's exactly and there may be parties that are in bankruptcy that don't reject contracts when they otherwise could have under section 365 of the parties that don't file for bankruptcy in the first instance because they fear that they won't be able to reject contracts appropriately certainly there won't be pre-packaged bankruptcies in this area which save time and costs and are done quickly would become very difficult because parties would fear that they needed to go to FERC and ask for FERC's approval of rejection so for all those reasons there could be real consequences in the world of leaving this order in place even though it hasn't been subject to judicial review and again i think that is why FERC and why the interveners want the order to be left in place because they think it's going to do something helpful for them in the world if it is even though future orders future regulations could be overturned by another court i'd also like to talk about um the fact that pg&e didn't take voluntary action here to move the case so that the bank or hey council i i was curious do you agree with mr shipper's characterization that uh the actions that cause the mootness do because that's how i read dilley um just to say that those actions have to be related the tendency of appeal to hold it against that party i very much agree with you your honor that there is a strong statement not only in dilley but also in the supreme court's decision in alvarez and a number of other muncie where vacature cases that says essentially if a party is engaged in a larger enterprise and it's sort of going about its business as part of that larger enterprise in dilley it was prison officials who are managing a prison but who transferred a prisoner who had a claim away but if that was just part and parcel of the operation of the prison or here if what pg&e was doing was part and parcel of its obligations as a debtor in possession in this enormous complicated bankruptcy where it had fiduciary obligations to creditors to employees to shareholders in that circumstance there is not a strategic decision that's being made that's directed at the appeal or directed at the dispute in the appeal to obtain mootness and to try to and their courts have been pretty clear that the bank principal doesn't apply one of the cases that we cited to the court in our supplemental brief is admittedly not a precedential decision of this court it's an unpublished decision but we think it's very analogous it's called marshak and that was a decision where the losing party below was a trustee in bankruptcy that party took the action that mooted his own appeal which was selling property what this court said was the bank or acting in the normal course of his responsibilities as a trustee in bankruptcy and it wasn't a strategic decision to try to moot out the case and we think exactly the same thing is true here as i say perk at pg&e had a number of obligations as a debtor in possession here to all kinds of parties in this very large and complicated bankruptcy proceeding as judge callahan pointed out earlier there was also the june 30th deadline under state law that was important for pg&e to for a variety of reasons it helped pg&e it was really the only reason that pg&e was able to pay the claims in this case including 25 billion dollars of claims by fire victims and so pg&e was operating a much larger enterprise here are you telling me you've already spent the 21 billion um has it all been paid out your honor no it sounds like it sounds like you're that i'm money you have some of your own money billions of dollars have already been paid out to a fire victims trust and billions of dollars have been paid out into the go forward state wildfire fund so there are some there's some money that remains to be paid down the line but quite about a large amount of money has been paid out which is part of the reason why the plan became effective it was substantially consummated and that's the thing that ended up how much of the 21 billion is left um i'm not sure i have the exact figures in front of me your honor i know that i think approximately uh five billion dollars was paid out when the plan became effective into the fire victims trust and i think approximately an equivalent amount was paid out into this go forward wildfire fund but i apologize your honor i don't have the exact figures in front of me as i sit here today but nevertheless it remains the case that pg&e was under tremendous constraints here and that was true with respect to assumption or rejection of these power agreements as well pg&e entered the bankruptcy under the cloud of these FERC orders that was exactly what the counterparties intended when having received the required state law notice that pg&e was going to file for bankruptcy they went to FERC and within a matter of days before pg&e filed for bankruptcy got FERC to issue these orders that was meant to cast a pall on pg&e's rejection rights it was meant to constrain pg&e in its bankruptcy and that is exactly what it did and that is not the kind of voluntary action or the voluntary forfeiture that bank corp talks about or that cases like diddly and alvarez talk about or that this court talked about in marsha so for all those reasons i don't think that it's possible to say that pg&e is at blame at fault uh for the mootness here the mootness was something that happened as a result of the bankruptcy unfolding and one other important thing that i point to in this regard is that pg&e took active steps to attempt to accelerate this court's consideration of these appeals that was unsuccessful but we filed a motion in february suggesting further expeditions suggesting treatment of these appeals as urgent under this court's general orders and explaining the june 30th deadline we wouldn't have been as well prepared as we are to hear this appeal if we'd have uh no so no we have i think we we've heard that do you want to do you want to uh keep the rest of your time or well she's she'll get it she's down to it but the question is do either this um just in fairness because we've taken so much time with the other uh if you want to use the balance of your time i'll still give you four minutes okay for rebuttal thank you your honor if you have anything else you want to say um i would very much like to reserve my time for rebuttal if the court doesn't have any other questions i just add one last thing which is thank you very much which is that i think that um first of all the equities here dictate treating all these orders the same we agree that if the court vacates the four quarters that the bankruptcy court order should be vacated as well but what we think should not happen is that the order should receive differential treatment there are two sides of the same coin and a sort of larger dispute here and doing that would essentially leave one party victorious even though the court was unable to reach the merits because of mootness and to the extent that the court were to think that pg&e were responsible in some way for mootness and firkin the interveners bear responsibility as well because this mootness was coming down the track it was predictable that's why pg&e was able to file the uh motion that it filed before this court in february and firkin the interveners didn't take action to protect themselves that's distinct from the case that mr estes was referring to because that was a case where mootness occurred and the question was should there have been an appeal here the mootness was coming and pg&e and the interveners could have tried to take some action to avert it and if i could reserve the remainder of my time okay well you you've used your time but i'm going to give you four minutes so that you have four minutes for rebuttal okay thank you all right so then we go back to mr shepherd and i think you have two minutes and mr shepherd you're mute now you're not thank you i'm going to go back to a straightforward i'd like to go back to return to a straightforward application of bank corp the rules here are are precise and they are clear mr shepherd can i can i ask you a question related to i guess the thing that i found most compelling by by your closing counsel is you've got two adverse decisions from from courts of who knows what would happen if you come here we don't we don't look to the merits right you're not going to look at those decisions say you should lose therefore you should be mooted but what does seem sort of significant to me mr estes talked about how he really likes to have this decision on the books and i don't know exactly all the reasons but i i believe him that they're him and his coalition want to have your decision on what if we could end up in a weird circumstance where you have like say seven adverse decisions from seven different courts of appeal except for the ninth circuit right um and and you have this one decision that's left in place because we applied bankrupt uh bank corp the way you're saying and you'd be pointing this decision to see this as precedent but that'd be really weird i mean you'd have you'd have seven adverse courts of appeals decision and one one first decision left standing only because no court ever reviewed it and you would be able to rely on it and mr estes would be really happy with that but that seems to be exactly against the reason why the general munson where a rule exists so isn't that a problem for you guys your honor no one wants a national rule on this subject more than the commission uh we would of course like to have proceeded with review of the of the sixth circuit's decision as well as the fifth circuit's decision in merit both of those efforts were were frustrated by by the following first in merit there was no ability to pursue to pursue review because the public interest test that was applied by the district court on remand made it made the decision not to reject those contracts the the dispute went away on remand and vacature from the six circuit which vacated the bankruptcy court's opinion uh in that case you know what happened again the party settled not only did they settle but they settled in such a way where they precisely re-adopted exactly what the fault rate had always been and paid back damages so no controversy no one wants to be in front of the supreme court more than the united more more more more than than this commission more than the department of justice which joined in all of our briefs including our request for re-hearing a black in the sixth circuit we asked for expedition of this case before pg&e did we did not oppose the request for further expedition in february we want a court to review to review these judgments we are sure that we're going to get get get review down the road as the as the litigation in the southern district of texas and uh and the district of delaware continues so we want this case to continue we've been denied our opportunity to defend our orders here we've denied our opportunity to challenge the the six circuits orders as well but it is absolutely in the commission's interest to press ahead with this is also why we did not seek to stay the bankruptcy court's judgment or do anything else to frustrate the the orderly like somehow we our hands are dirty and that pg&e is some sort of white knight that has done everything it could to advance things is simply it really stretches it really stretches i don't think any i don't think anyone in california sees pg&e as a white knight but they do see them as a you know it's it's a balanced litigation i understand judge van dyke you asked you you wanted to explore a very important question about whether or not the rules in munsing where in bank apply or should apply differently to administrative to administrative orders so i will read to you straight from the supreme court's decision al um meckling barge lines this is at 368 us 324 at page 329 simply saying we think the principle enunciated in munsing order is at least is at least equally applicable to unreviewed administrative orders and we adopt this procedure here that is of course also what this court held in in pacific tobo uh in the in the 80s and this lead and pacific tobo leads us to a whole different problem in the event that the that this court decides they wish to vacate uh the commission's orders over the commission's objection because we will we will fiercely put that wherever we can then the commit then this court also needs to confront the other non-justiciable problems which have thus far in this discussion been overlooked although i keep trying to bring us back to that center of gravity you cannot vacate first orders if you don't have jurisdiction over the orders in the first place right that's okay council i had a bank or in bank where it says we don't apply the the automatic rule of vacateur when uh the party causes mootness but it's it's it's mootness that results from the unilateral action of the party who prevailed below how did pg&e prevail below before the firm they didn't they didn't they did not they did not prevail below but right yeah but so it sounds like bank quarter that the rule against non-vacateur should not apply since they didn't prevail below i i think your honor with respect i believe that what you just quoted is is is an upside down version of the rule um okay i believe that that that that i could i could read to you directly from the from the opinion if i could go for it petitioner's burden as the party seeking relief from the status quo the appellate judgment to demonstrate not merely equivalent responsibility for mootness but equitable entitlement to the constitutes failure so they were the petitioners they voluntarily forfeited that means they lost not that they won i i hope i hope that that that that that that clears it up um your honor um i if i i have several things more to say um my next my next topic would be marshak uh marshak as uh as as pg&e's council acknowledges is a non-presidential decision i think the court was wise not to make a presidential it is in conflict with presidential decisions not only of this court but also of the supreme court and so i don't recommend that you follow it also its facts are decidedly uncompelling that is a chapter 7 liquidation case there was no choice on on the part of the of the bankruptcy um uh trustee in that case his job was to sell the property zero choice um and to the extent that one wishes to engage in in unilateral or not discussions about unilateral or non-unilateral behavior the one thing that i think is absolutely clear let me just ask my panel do you want to continue to hear this since i'm allowing him to go way over that's what that's what's important here i think i'm fine i mean we have your argument on this well with that then um i'll rest thank you very much for the opportunity all right thank you thank you yeah let's put five minutes on for miss goldenberg since i'm going over everywhere so go ahead we appreciate it your honor thank you just like to clarify what i said before my colleagues from afar have given me the information about the amount that's been paid out to fire victims nothing in the 21 billion dollar wildfire go forward fund has been paid out although pg&e's paid into that fund pg&e has paid 25.5 billion dollars to fire victims but that's from pg&e's equity in debt it's not from that fund but nevertheless meeting that june 30th deadline was very important in order to be enable pg&e to raise the money that let it do that and so pg&e was operating operating under a constraint there um i'd like to talk how long before you can next go into bankruptcy um there's certainly no plan to do that your honor i don't know but is there like is there a is there a year if you go to if you have a plan approved or can you just go anytime you want to i'm not aware of there being a time limitation your honor but i'm all right so would it be safe to say if you hadn't gotten the 21 billion dollars you'd be right back in there well i think again it's not quite as direct as that it was the um pg&e uh it's very important going forward to be part of that go forward wildfire fund and yes it is possible that if pg&e hadn't been able to do that it would not only have had trouble emerging from this bankruptcy but it would have difficulties going forward so there was a real constraints there for sure improving the plan now is what is that any way was any of that approval based on the fact that you were and a lot of it certainly was the ability of pg&e to compensate creditors including fire victims yes absolutely that was part of the bankruptcy court's analysis and confirming the plan um if i could bankruptcy court maybe not have approved it if you weren't getting 21 billion if pg&e hadn't been able you mean to participate in the go forward wildfire fund yeah i don't know exactly how that would have turned out but it certainly is critical to pg&e operation that pg&e participate in that go forward wildfire fund that's the reason that it was so critical or one of the reasons that it was so critical to meet that june 30th deadline for confirmation of the plan and approval by the california public utilities commission with respect to marshak i am unclear on what decision my friend thinks that that conflicts with but marsha is very much in line with other decisions of this court precedential decisions and with supreme court decisions and one of the ways it did that is that it focused on this question of whether there was a strategic decision to uh to moot the case and to give up appeal rights and it's not only this court that said that it's the supreme court in alvarez relied on desire whether a desire to avoid review played any role that is part and parcel of the muncie ware analysis and as i said marshak is also very consistent with dilly and with alvarez in terms of looking at whether the entity is engaged in a larger enterprise when it takes the action that results in mootness so uh i think that marshak is very relevant here and it's very consistent with precedential decisions and then the other thing that i would add is that uh firk made just a brief reference to a point that it argues in its briefs that this court needs to address ripeness and collateral attack the sort of threshold issues before it gets to the mootness and vacature issues we don't think that's right perks it's a single 1980 case from this court which has never been subsequently cited for the proposition that relies on a premise that's been exploded by a subsequent case law what the court said there was that it had to address the threshold jurisdictional issue before we ever faced the question of mootness the supreme court and this court have subsequently made clear that you can assume a threshold issue like for instance standing in order to analyze mootness and in fact just a few months ago in an unpublished decision this court recited that principle it assumed standing it found mootness and it vacated the order below under monting where and the supreme court has done the same thing and even bank corp itself says when talking about why it is that a court can vacate uh despite not having article 3 jurisdiction at the point of mootness it says vacature is appropriate even though the court doesn't have jurisdiction at that stage and may never in fact have had jurisdiction so we just don't think it's right that the court needs to engage in that threshold analysis if the court were to do that we think it's clear that these matters were right and that there was no collateral attack and with respect to ripeness pg&e suffered an immediate direct in the moment uh injury in fact as soon as the perp orders issued because it had its bargaining power with its counterparties essentially taken away and that was a real injury this court's cases say so um and so uh for all those reasons i think that the normal presumption of vacature should apply here there is no bank or principle that should apply here the court should vacate the perp orders it should vacate all the orders here um and uh the court should definitely take into account the fact that pg&e in its bankruptcy was operating under a number of legal constraints including the fact that if there hadn't been the fund available that um judge callahan and i were discussing earlier and pg&e couldn't have emerged from bankruptcy it wouldn't have been a viable entity without that fund that's only one of the forfeiture within the meaning of this court's case law in the supreme court's case law unless the court has further questions any questions from my colleagues judge kind i know this would be a little irregular but i do have one more question for mr shepard if you would if you would well it it would be it would not be irregular in the sense that i ordered it from the start so um if uh yes i i promised my colleagues they can ask any questions so thank you so much yes you may do so so so mr shepard you you'll get the last word but you may not you may not like it um so you you mentioned this al meckling barge lines case to sort of to respond to like by my concern which which is just an intuitive concern that agencies are different than then especially agencies that are acting self-interestedly and you said you quoted them to say we think the principle enunciated in munsing where at least it's at least equally applicable to unreviewed administrative orders and we adopt this procedure here and i think you were signing out to say we should you know we should we should treat agency orders exactly like but in but that's not actually what it's saying here it's actually saying the court's saying we think the principle enunciated munsing where which is the that it should be vacated the munsing where vacature principle is at least equally applicable which which would imply that it might be more applicable to agency decisions to unreviewed administrative orders and so it seems to me that what you cited in aj meckling barge arguably actually is consistent with the idea that we would we would we would um treat uh that we would we would approach agency decisions with even with more of a a thought that we would vacate them right and that seems to be what aj it doesn't seem to be standing for the fact that that they're that they're equal it says at least equally vacatable is what it seems to be saying i'm not sure that i understand i understood your question so i think he's telling you just like uh uh judge bumate was said to be upside down that you were upside down and how you and how you uh how dare you say that about my good friend judge no but but i'm always i think i think what i'm saying is to be i'm sorry i'm not real clear but i'm saying it seems to me that barge is saying that um we're going to say that you should at least vacate agency or administrative orders at least as often as you would vacate court orders but the court left it open that that that you might vacate them you might might have more of a tendency to vacate them than less that's what it seems to me al meckling is saying in context i'm not i'm not sure that i agree with that reading and we'd be happy to to provide you any supplemental authorities you might wish on the application whether or not the rule should be any different um for for appellate uh for appellate actions and on review of agency orders but i think one place to step back to here is that if you you'd focus previously on the difference between uh reviewing uh a lower court decision within the same branch i think it would be fair to say that um when the court is stepping over to the test i don't know if that's true because the you know the idea is that the courts are are are non-biased right i mean well i would think i would like to have judge van dyke and judge and uh mr shepherd's site precedent for what you're each arguing so that's an invitation to provide a supplemental brief we will definitely be prepared no i i think i think we can i think we can resolve it amidst ourselves but i want to thank all council uh for being very well prepared and being very helpful i think i speak on behalf of the entire panel um thank you it was a pleasure and very helpful uh in this process and uh unless uh i'll give one let either of my colleagues have any additional questions you judge okay i think that um we will then we are adjourned for the week thank you everyone and uh thank you council you'll hear from us thank you your honors thank you this court for this session stands adjourned
judges: Callahan, Bumatay, Vandyke